Argued and submitted November 8, 1979, reversed
and remanded February 11, reconsideration denied March 20,
petition for review denied April 1, 1980 (289 Or 1)

# CARRIGG, et ux,
## *Appellants,*
### *v.*
# FACKRELL, et al,
## *Defendants,*
# MURTY, et al,
## *Respondents.*
### (No. 99554, CA 13981)

606 P2d 636

Thomas B. Brand, Salem, argued the cause for appellants. With him on the brief was Brand, Lee, Ferris & Embick, Salem.

Phillip R. Muir, Portland, argued the cause and filed the brief for respondents Ankeny Hill Development Co., and Mira Monte Farms, Inc.

Respondents Anthony F. Murty and Benedict P. Murty waived appearance.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

LEE, J., dissenting opinion.

## RICHARDSON, J.

Plaintiff sellers brought this suit for strict foreclosure of a land sale contract, alleging *inter alia* that defendants failed to pay the balance of the purchase price when due. Plaintiffs appeal from the trial court's decree in favor of defendants. We reverse and remand.

In December, 1971, plaintiffs and defendants Dale and Mary Fackrell and Ralf and Patricia Erlandson entered into a contract for the sale of certain real property by plaintiffs to those defendants (original purchasers). The contract provided that the original purchasers were to pay the $140,000 deferred portion of the purchase price in $1,000 monthly installments, commencing July 1, 1972, and that the remaining balance was to be paid in full on or before January 1, 1977, unless the original purchasers consummated a "resale * * * to qualified purchasers." In the event of such a resale, payment of the balance could be amortized over a 20 year period.[1]

In December, 1976, the defendant Ankeny Hill Development Co. (corporation) was formed. It had total assets of $2,000, obtained from the stock subscriptions of its two shareholders, defendant Dale Fackrell and his son Brad Fackrell. On December 29, 1976, the original purchasers assigned their interests in the land sale contract to the corporation. On January 14, 1977, plaintiffs' attorney notified the original purchasers that plaintiffs

> "* * * do not consider Ankeny Hill Development Co. a qualified purchaser under Section 3(E) of the agreement, especially when you have stock ownership of the corporation. This transfer hardly qualifies as a sale to a bonafide qualified purchaser. It

---

[1] Paragraph 3E of the contract provides:

"Notwithstanding any of the foregoing provisions, the full sum or principal shall be due and payable on or before January 1, 1977, except that in the event of resale by BUYERS to qualified purchasers, principal balance may be amortized in monthly payments over a twenty (20) year period, including interest."

should be also noted that the Carriggs were not consulted on what is a 'qualified purchaser'.
  "* * * * *."

Plaintiffs demanded payment of the contract balance. Defendants have not complied with the demand.

The principal issue in this case is whether the corporation is a "qualified purchaser," and whether the assignment to it of the original purchasers' interests therefore had the effect of allowing defendants to amortize payment of the balance over 20 years rather than paying the balance in full by January 1, 1977. The contract does not define "qualified purchasers," and it establishes no mechanism for determining what a "qualified purchaser" is. The parties call our attention to no case or other authority construing the same or similar contractual language.

As we construe the contract, the term "qualified purchasers" means at least two things. First, it refers to an entity or entities other than the original purchasers. The amortization alternative to the balloon payment requirement arises only if there has been a *"resale"* by the original purchasers *to* "qualified purchasers." Second, the qualifications which an entity must have to be a "qualified purchaser" are financial in nature. The contract requires the original purchasers to pay the balance in full by January 1, 1977, but it permits any succeeding "qualified purchasers" to defer ultimate payment over a period of 20 years. In that context, the term "qualified purchasers" necessarily refers to purchasers with financial characteristics—inherent or comparative to those of the original purchasers—sufficient to assure plaintiffs that the deferred obligation ultimately will be satisfied by the successor purchasers.

Defendants contend that the original purchasers and the corporation are separate entities and that the corporation is a "qualified purchaser." Clearly, the relationship of the original purchasers and the corporation is not comparable to the original purchasers'

relationship with General Motors. But however separate or however collusive the relationship of the original purchasers and the corporation may have been, the corporation's manifest lack of financial qualifications is inconsistent with defendants' argument that the corporation is a "qualified purchaser." The corporation was formed for the sole purpose of acquiring the original purchasers' interests under the land sale contract. At the time of the assignment of the original purchasers' interests to it, the corporation had total assets of $2,000. The principal contract balance at that time exceeded $120,000. Neither of the corporation's shareholders (nor anyone else) was a guarantor of its obligation. In sum, plaintiffs' assurance of receiving the balloon payment, which was to come due three days after the putative "resale" from the original purchasers to the corporation, was supported by the combined resources of the Fackrells and the Erlandsons, who were directly obligated to make that payment. In light of the "resale," plaintiffs' expectancy of payment was putatively to depend on the obligation, amortized over 20 years, of a thinly capitalized corporation in which the Erlandsons had no interest and which the Fackrells were not required to fund.[2]

The effect of the purported assignment was to defer the time for complete payment and to reduce the likelihood or dependability of payment. The very purpose of the word "qualified" in the contract as we construe it was to prevent exactly what the defendants sought to achieve. In essence, defendants sought through the assignment from the original purchasers to the corporation to compel plaintiffs to sacrifice two birds in the hand for one in the bush (to which it would

---

[2] In conjunction with the assignment of the original purchasers' interests to the corporation, Dale Fackrell obtained all of the corporation's stock, apparently as consideration for the interest he assigned. At a considerably later time, the stock of the corporation was acquired by defendant Mira Monte Farms, Inc. The latter acquisition has no bearing on whether the corporation was a "qualified purchaser" at the time of the assignment or on January 1, 1977.

complete its migration 20 years later). The proposition that the corporation was a "qualified purchaser" is untenable.

Defendants next argue that plaintiffs accepted four $1,000 monthly installment payments after January 1, 1977, and, apparently that they are therefore estopped to contend that the payment of the balance by that date was required. We find no inconsistency between the acceptance of the installments, if such occurred, and the viability of plaintiffs' insistence that defendants perform their contractual obligation to pay the balance. The most that can be said for defendants' argument is that there has been a partial accord and satisfaction as to the part of the balance which was paid in $1,000 increments. We also find no pleading or proof of estoppel by defendants. *See Brandtjen & Kluge v. Biggs*, 205 Or 473, 288 P2d 1025, 51 ALR2d 1435 (1955); *Earls et ux v. Clarke et al*, 223 Or 527, 355 P2d 213 (1960).[3]

In computing the amount of the unpaid balance alleged in their amended complaint, plaintiffs credited certain rents to defendants to which the latter are entitled under the contract but which plaintiffs have collected. However, plaintiffs deducted a 25 percent "management fee" from those rents to arrive at the amount of the credit. We find nothing in the contract or the record which supports plaintiffs' claim to a management fee.

The decree is reversed and the suit is remanded to the trial court to determine appropriate attorney's fees and costs to be awarded plaintiff for the trial, and, in other respects, to enter a decree which conforms to the prayer of the amended complaint, with appropriate adjustments for any rents to which defendants are

---

[3] Three of the installment payments in question were made by Mrs. Fackrell by personal check. None were made on printed checks of the corporation, although all of the payments were of course made after the assignment from the original purchasers to the corporation.

entitled and any purchase price payments they have made which are not reflected by the amended complaint.

Reversed and remanded.

**LEE, J., dissenting.**

I would affirm the trial court. The pivotal issue is the language of the contract. As conceded by the majority:

"* * * The contract does not define 'qualified purchasers,' and it establishes no mechanism for determining what a 'qualified purchaser' is. * * *"

The majority then proceeds to provide such "mechanics."

Had the plaintiffs alleged fraud or mistake, then we might properly consider interpretation of the words "qualified purchaser". However, plaintiffs only sought strict foreclosure of the contract, so we should strictly construe its terms as did the trial court.

Accordingly, I respectfully dissent.